Ryan Milun (Bar No. 043412006)
**THE MILUN LAW FIRM, LLC**
20 Commerce Drive, Suite 135
Cranford, New Jersey 07016
Phone: 862-702-5010 ext. 1001
ryan.milun@milunlaw.com

*Attorneys for Plaintiff*

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| DONALD P. MILIONE, D.C., | CIVIL ACTION NO.: |
| Plaintiff, | |
| vs. | **COMPLAINT** |
| CIGNA HEALTH AND LIFE INSURANCE COMPANY, AMERICAN SPECIALTY HEALTH GROUP AND , EMPIRE BLUE CROSS BLUE SHIELD | |
| Defendant. | |

Plaintiff, Donald P. Milione, D.C. ("Milione"), with a business address located at 330 E. 79 Street, New York, New York 10075 for his complaint against defendants Cigna Health and Life Insurance Company ("Cigna"); American Specialty Health Group ("ASH"); and Empire Blue Cross Blue Shield ("BCBS"); states:

## THE PARTIES

1.     Cigna Health and Life Insurance Company ("Cigna"); is a corporation that sells insurance products, including health insurance plans and policies, within the State of New Jersey and specifically within this district.

2.     American Specialty Health Group ("ASH") is a company that performs reviews on behalf of Cigna and reviews appeals related to benefit determinations under the Cigna health plans, within the State of New Jersey and specifically within this District.

3.     Empire Blue Cross Blue Shield ("BCBS") is a corporation that sells insurance products, including health insurance plans and policies, within the State of New Jersey and specifically within this District.

4.     Donald P. Milione ("Milione") provides chiropractic services to his patients in the New York, New Jersey and Connecticut area.

5.     During the relevant time period, Milione provided chiropractic services or as otherwise described in the Cigna plan, "Chiropractic Care Services" – i.e., diagnostic and treatment services utilized in an office setting by chiropractic doctors, including management of neuromusculoskeletal conditions through manipulation – to Jeremy S who was covered by an insurance policy sold by Cigna and administered by ASH.  Jeremy S has assigned his claims to coverage and benefits under the Cigna plan to Milione so that he can prosecute this action for the

recovery of benefits improperly denied or underpaid by Cigna under the plan covering Jeremy S at the time the services were performed.  American Specialty Health Group  performed the review of the claims submitted by Milione on behalf of Jeremy S and ASH  improperly upheld the denial of coverage.

6.      Milione also provided chiropractic services or as otherwise described in the Cigna plan, "Chiropractic Care Services" – i.e., diagnostic and treatment services utilized in an office setting by chiropractic doctors, including management of neuromusculoskeletal conditions through manipulation – to Elizabeth K who was covered by an insurance policy sold by Cigna and administered by ASH. Elizabeth K has assigned her claims to coverage and benefits under the Cigna plan to Milione so that he can prosecute this action for the recovery of benefits improperly denied or underpaid by Cigna under the plan covering Elizabeth K at the time the services were performed.   American Specialty Health Group performed the review of the claims submitted by Milione on behalf of Elizabeth K and ASH  improperly upheld the denial of coverage.

7.      Milione also provided chiropractic services or as otherwise described in the Cigna plan, "Chiropractic Care Services" – i.e., diagnostic and treatment services utilized in an office setting by chiropractic doctors, including management of neuromusculoskeletal conditions through manipulation – to Andrew D who was covered by an insurance policy sold by Cigna and administered by ASH.  Andrew

D has assigned her claims to coverage and benefits under the Cigna plan to Milione so that he can prosecute this action for the recovery of benefits improperly denied or underpaid by Cigna under the plan covering Andrew D at the time the services were performed.  American Specialty Health Group performed the review of the claims submitted by Milione on behalf of Andrew D and ASH  improperly upheld the denial of coverage.

8.     Milione also provided chiropractic services or as otherwise described in the Cigna plan, "Chiropractic Care Services" – i.e., diagnostic and treatment services utilized in an office setting by chiropractic doctors, including management of neuromusculoskeletal conditions through manipulation – to Diane T who was covered by an insurance policy sold by Cigna. Diane T has properly assigned her claims to coverage and benefits under the Cigna plan so that Milione can prosecute this action for the recovery of benefits improperly denied or underpaid by Cigna under the plan covering Diane T at the time the services were performed.

9.     Milione also provided chiropractic services or as otherwise described in the Cigna plan, "Chiropractic Care Services" – i.e., diagnostic and treatment services utilized in an office setting by chiropractic doctors, including management of neuromusculoskeletal conditions through manipulation – to Kavita N who was covered by an insurance policy sold by Cigna. Kavita N has properly assigned her claims to coverage and benefits under the Cigna plan so that Milione can prosecute

this action for the recovery of benefits improperly denied or underpaid by Cigna under the plan covering Kavita N at the time the services were performed.

10.     Milione also provided chiropractic services or as otherwise described in the BCBS plan, "Chiropractic Care Services" – i.e., diagnostic and treatment services utilized in an office setting by chiropractic doctors, including management of neuromusculoskeletal conditions through manipulation – to Christopher H who was covered by an insurance policy sold by BCBS.  Christopher H has properly assigned his claims to coverage and benefits under the BCBS plan so that Milione can prosecute this action for the recovery of benefits improperly denied or underpaid by BCBS under the plan covering Christopher H at the time the services were performed.

11.     Milione also provided chiropractic services or as otherwise described in the BCBS plan, "Chiropractic Care Services" – i.e., diagnostic and treatment services utilized in an office setting by chiropractic doctors, including management of neuromusculoskeletal conditions through manipulation – to Maria P who was covered by an insurance policy sold by BCBS.  Maria P has properly assigned her claims to coverage and benefits under the BCBS plan so that Milione can prosecute this action for the recovery of benefits improperly denied or underpaid by BCBS under the plan covering Maria P at the time the services were performed.

12.     Finally, Milione also provided chiropractic services or as otherwise described in the BCBS plan, "Chiropractic Care Services" – i.e., diagnostic and treatment services utilized in an office setting by chiropractic doctors, including management of neuromusculoskeletal conditions through manipulation – to Brittany M who was covered by an insurance policy sold by BCBS. Brittany M has assigned his claims to coverage and benefits under the BCBS plan to Milione so that he can prosecute this action for the recovery of benefits improperly denied or underpaid by BCBS under the plan covering Brittany M at the time the services were performed.

## JURISDICTION AND VENUE

13.     This Court has federal question jurisdiction over this action under 28 USC §1331 and under the Employee Retirement Income Security Act ("ERISA") 29 U.S.C. §1132 as this action involves a claim by Milione for his patients' benefits under an employee benefit plan regulated and governed under ERISA.

14.     Venue exists in this District under 28 USC §1391 in that the defendants reside in this district as entities that are "subject to the Court's personal jurisdiction with respect to the civil action in question" and the Defendants regularly conduct business in this district including the sale of insurance policies to citizens of this District.

## NATURE AND BACKGROUND OF THIS ACTION

15.     This action governed by Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001, *et seq.*, arises out of the repeated failure of Defendants to provide benefits for medically necessary treatment of several patients of plaintiff Dr. Donald Milione, D.C. ("Milione"). Defendants set up one obstacle after another to Plaintiff's quest to have his services covered.

16.     In addition, to the extent the health plans covering the patients are not governed by ERISA, Milione requests that this Court exercise supplemental jurisdiction over the various patient claims for defendants' failure to pay or underpaying for the benefits provided.

17.     As described below, Defendants repeatedly denied or underpaid Milione's patients claims for various services, including Nerve Conduction Studies and in denying or underpaying the claims, routinely ignored relevant information submitted by Milione during the claims process and refused to properly consider the appeals filed by Milione on behalf of his patients.

18.     Defendants not only made erroneous benefit determinations that should be reversed, they also grievously violated their duties as ERISA fiduciaries.

19.     Defendants have failed to act prudently and in the interests of Milione's patients, the plan beneficiaries, have failed to follow written plan documents, and have failed to decide the claims under a full and fair claims

procedure as set forth in ERISA's claims regulations.   See 29 U.S.C. §§ 1104, 1133; 29 C.F.R. § 2560.503-1.

20.    Plaintiff seeks payment of all benefits due to his patients under the valid assignments he received prior to providing services and Plaintiff further seeks injunctive and other equitable relief requiring Defendants to comply with the requirements of ERISA in the future with regard to additional services provided to the patients at issue in this case.

*Jeremy S:*

21.    Jeremy S was a patient of Milione and CIGNA denied benefits or significantly underpaid for certain services performed on the following dates:
May 16, 2022, May 23, 2022, June 27, 2022, July 11, 2022, July 18, 2022
July 25, 2022, August 15, 2022.

22.    Jeremy S was, at all relevant times, a covered beneficiary under a benefit plan pursuant to which Jeremy S is entitled to health care benefits.

23.    The chiropractic services, or as otherwise described in the Cigna plan, "Chiropractic Care Services" – i.e., diagnostic and treatment services utilized in an office setting by chiropractic doctors, including management of neuromusculoskeletal conditions through manipulation – provided by Milione are covered services under the CIGNA plan and fall under the category of "Outpatient

Therapy Services" and accordingly, Milione is entitled to payment for the services provided.

24.     The chiropractic services covered under the Cigna plan include manipulation and other ancillary physiological treatment rendered to joints to restore motion, reduce pain and improve function.

25.     Per the Cigna plan, outpatient services for out of network providers, such as Milione are paid in the range of 60-80% of the allowed charges and/or maximum reimbursable amount, which are calculated for out of network providers, such as Milione, based on the providers normal charge for a similar service or an employer-selected percentage of a fee scheduled developed by Cigna.

26.     Historically, until Cigna's improper denials and/or underpayments for the various patients identified in this complaint, the payment by Cigna has been in the 60-80% of the billed charges by Milione.

27.     When Jeremy S became a patient of Milione, she signed an assignment of benefits, which provided that:

> I hereby assign all applicable health insurance benefits to which I and/or my dependents are entitle to Provider [defined as Milione]. . . I hereby authorize Provider to submit claims, on my and/or my dependent's behalf, to the benefit plan (or its administrator) listed on the current insurance card I provided to Provider, in good faith. I also hereby instruct my benefit plan (or its administrator) to pay Provider directly for services rendered to me or my dependents.  To the extent that my current policy prohibits direct payment to Provider, I hereby instruct and direct my benefit plan (or its administrator) to provide documentation stating such non-assignment to myself and Provider

upon request. Upon proof of such non-assignment, I instruct my benefit plan (or its administrator) to make out the check to me and mail it directly to Provider.

28.     In addition, Jeremy S signed an authorization allowing Milione to act as Jeremy S's "Authorized Representative" in connection with any "claim, right, or cause in action that [she] might have under such insurance policy and/or benefit plan" and the right to "pursue such claim, right or cause of action in connection with said insurance policy and/or benefit plan."

29.     The claims for the denied procedures were delivered to CIGNA with relevant medical records and other information supporting the claim; however, CIGNA still refused to pay for these covered benefits, inexplicably claiming on various occasions that the medical records were not received or were not sufficient to support the medical necessity of the procedures.

30.     CIGNA's denial or underpayment of benefits was not only untimely, but it was also completely improper, arbitrary, and contrary to the benefits plan.

31.     The total for all of the required services that were improperly denied or underpaid by CIGNA for Jeremy S is: **$16,691.39.**

32.     After the benefits were improperly denied or underpaid, Milione (on behalf of Jeremy S) went through the entire available appeal process and inexplicably, all appeals were denied and the required payment remains outstanding.

33.    To date, the claim for benefits for Jeremy S remains denied and unpaid.

*Elizabeth K:*

34.    Elizabeth K was a patient of Milione and Cigna denied benefits or significantly underpaid for certain services performed on the following dates:

April 5, 2021, April 8, 2021, May 21, 2021, September 6, 2022, September 7, 2022, September 12, 2022, September 14, 2022, September 19, 2022, September 26, 2022, October 3, 2022, October 5, 2022, October 10, 2022, October 17, 2022, October 19, 2022, October 26, 2022, October 31, 2022, November 2, 2022, November 7, 2022, November 14, 2022, November 16, 2022, November 21, 2022, November 23, 2022, November 28, 2022, December 6, 2022, December 12, 2022, December 19, 2022.

35.    Elizabeth K was, at all relevant times, a covered beneficiary under a benefit plan pursuant to which, Elizabeth K is entitled to health care benefits.

36.    The chiropractic services, or as otherwise described in the Cigna plan, "Chiropractic Care Services" – i.e., diagnostic and treatment services utilized in an office setting by chiropractic doctors, including management of neuromusculoskeletal conditions through manipulation – provided by Milione are covered services under the CIGNA plan and fall under the category of "Outpatient

Therapy Services" and accordingly, Milione is entitled to payment for the services provided.

37.     The chiropractic services covered under the Cigna plan include manipulation and other ancillary physiological treatment rendered to joints to restore motion, reduce pain and improve function.

38.     Per the Cigna plan, outpatient services for out of network providers, such as Milione are paid in the range of 60-80% of the allowed charges and/or maximum reimbursable amount, which are calculated for out of network providers, such as Milione, based on the providers normal charge for a similar service or an employer-selected percentage of a fee scheduled developed by Cigna.

39.     Historically, until Cigna's improper denials and/or underpayments for the various patients identified in this complaint, the payment by Cigna has been in the 60-80% of the billed charges by Milione.

40.     When Elizabeth K became a patient of Milione, she signed an assignment of benefits, which provided that:

> I hereby assign all applicable health insurance benefits to which I and/or my dependents are entitle to Provider [defined as Milione]. . . I hereby authorize Provider to submit claims, on my and/or my dependent's behalf, to the benefit plan (or its administrator) listed on the current insurance card I provided to Provider, in good faith. I also hereby instruct my benefit plan (or its administrator) to pay Provider directly for services rendered to me or my dependents.  To the extent that my current policy prohibits direct payment to Provider, I hereby instruct and direct my benefit plan (or its administrator) to provide documentation stating such non-assignment to myself and Provider

upon request. Upon proof of such non-assignment, I instruct my benefit plan (or its administrator) to make out the check to me and mail it directly to Provider.

41.     In addition, Elizabeth K signed an authorization allowing Milione to act as Elizabeth K's "Authorized Representative" in connection with any "claim, right, or cause in action that [she] might have under such insurance policy and/or benefit plan" and the right to "pursue such claim, right or cause of action in connection with said insurance policy and/or benefit plan."

42.     The claims for the denied procedures were delivered to Cigna with relevant medical records and other information supporting the claim; however, Cigna still refused to pay for these covered benefits, inexplicably claiming on various occasions that the medical records were not received or were not sufficient to support the medical necessity of the procedures.

43.     Cigna's denial or underpayment of benefits was not only untimely, but it was also completely improper, arbitrary, and contrary to the benefits plan.

44.     The total for all of the required services that were improperly denied or underpaid by Cigna for Elizabeth K is: **$23,791.33.**

45.     After the benefits were improperly denied or underpaid, Milione (on behalf of Elizabeth K) went through the entire available appeal process and inexplicably, all appeals were denied and the required payment remains outstanding.

46.     To date, the claim for benefits for Elizabeth K remains denied and unpaid.

*Andrew D:*

47.     Andrew D was a patient of Milione and Cigna denied benefits or significantly underpaid for certain services performed on the following dates:

January 12, 2022, January 17, 2022, January 19, 2022, January 24, 2022, January 26, 2022, February 9, 2022, February 16, 2022, February 23, 2022,

March 2, 2022, March 16, 2022, April 6, 2022

48.     Andrew D was, at all relevant times, a covered beneficiary under a benefit plan pursuant to which, Andrew D is entitled to health care benefits.

49.     The chiropractic services, or as otherwise described in the Cigna plan, "Chiropractic Care Services" – i.e., diagnostic and treatment services utilized in an office setting by chiropractic doctors, including management of neuromusculoskeletal conditions through manipulation – provided by Milione are covered services under the CIGNA plan and fall under the category of "Outpatient Therapy Services" and accordingly, Milione is entitled to payment for the services provided.

50.     The chiropractic services covered under the Cigna plan include manipulation and other ancillary physiological treatment rendered to joints to restore motion, reduce pain and improve function.

51.    Per the Cigna plan, outpatient services for out of network providers, such as Milione are paid in the range of 60-80% of the allowed charges and/or maximum reimbursable amount, which are calculated for out of network providers, such as Milione, based on the providers normal charge for a similar service or an employer-selected percentage of a fee scheduled developed by Cigna.

52.    Historically, until Cigna's improper denials and/or underpayments for the various patients identified in this complaint, the payment by Cigna has been in the 60-80% of the billed charges by Milione.

53.    When Andrew D became a patient of Milione, he signed an assignment of benefits, which provided that:

> I hereby assign all applicable health insurance benefits to which I and/or my dependents are entitle to Provider [defined as Milione]. . . I hereby authorize Provider to submit claims, on my and/or my dependent's behalf, to the benefit plan (or its administrator) listed on the current insurance card I provided to Provider, in good faith. I also hereby instruct my benefit plan (or its administrator) to pay Provider directly for services rendered to me or my dependents.  To the extent that my current policy prohibits direct payment to Provider, I hereby instruct and direct my benefit plan (or its administrator) to provide documentation stating such non-assignment to myself and Provider upon request. Upon proof of such non-assignment, I instruct my benefit plan (or its administrator) to make out the check to me and mail it directly to Provider.

54.    In addition, Andrew D signed an authorization allowing Milione to act as Andrew D's "Authorized Representative" in connection with any "claim, right, or cause in action that [she] might have under such insurance policy and/or benefit

plan" and the right to "pursue such claim, right or cause of action in connection with said insurance policy and/or benefit plan."

55.    The claims for the denied procedures were delivered to CIGNA with relevant medical records and other information supporting the claim; however, CIGNA still refused to pay for these covered benefits, inexplicably claiming on various occasions that the medical records were not received or were not sufficient to support the medical necessity of the procedures.

56.    CIGNA's denial or underpayment of benefits was not only untimely, but it was also completely improper, arbitrary, and contrary to the benefits plan.

57.    The total for all of the required services that were improperly denied or underpaid by CIGNA for Andrew D is: **$23,076.71.**

58.    After the benefits were improperly denied or underpaid, Milione (on behalf of Andrew D) went through the entire available appeal process and inexplicably, all appeals were denied and the required payment remains outstanding.

59.    To date, the claim for benefits for Andrew D remains denied and unpaid.

*Diane T*

60.    Diane T patient of Milione and Cigna denied benefits or significantly underpaid for certain services performed on the following dates:

June 1, 2022, June 2, 2022, June 16, 2022, June 22, 2022, June 27, 2022, June 29, 2022, July 5, 2022, July 6, 2022.

61.    Diane T was, at all relevant times, a covered beneficiary under a benefit plan pursuant to which, Diane T is entitled to health care benefits.

62.    The chiropractic services, or as otherwise described in the Cigna plan, "Chiropractic Care Services" – i.e., diagnostic and treatment services utilized in an office setting by chiropractic doctors, including management of neuromusculoskeletal conditions through manipulation – provided by Milione are covered services under the CIGNA plan and fall under the category of "Outpatient Therapy Services" and accordingly, Milione is entitled to payment for the services provided.

63.    The chiropractic services covered under the Cigna plan include manipulation and other ancillary physiological treatment rendered to joints to restore motion, reduce pain and improve function.

64.    Per the Cigna plan, outpatient services for out of network providers, such as Milione are paid in the range of 60-80% of the allowed charges and/or maximum reimbursable amount, which are calculated for out of network providers, such as Milione, based on the providers normal charge for a similar service or an employer-selected percentage of a fee scheduled developed by Cigna.

65.     Historically, until Cigna's improper denials and/or underpayments for the various patients identified in this complaint, the payment by Cigna has been in the 60-80% of the billed charges by Milione.

66.     When Diane T became a patient of Milione, she signed an assignment of benefits, which provided that:

> I hereby assign all applicable health insurance benefits to which I and/or my dependents are entitle to Provider [defined as Milione]. . . I hereby authorize Provider to submit claims, on my and/or my dependent's behalf, to the benefit plan (or its administrator) listed on the current insurance card I provided to Provider, in good faith. I also hereby instruct my benefit plan (or its administrator) to pay Provider directly for services rendered to me or my dependents.  To the extent that my current policy prohibits direct payment to Provider, I hereby instruct and direct my benefit plan (or its administrator) to provide documentation stating such non-assignment to myself and Provider upon request. Upon proof of such non-assignment, I instruct my benefit plan (or its administrator) to make out the check to me and mail it directly to Provider.

67.     In addition, Diane T signed an authorization allowing Milione to act as Diane T's "Authorized Representative" in connection with any "claim, right, or cause in action that [she] might have under such insurance policy and/or benefit plan" and the right to "pursue such claim, right or cause of action in connection with said insurance policy and/or benefit plan."

68.     The claims for the denied procedures were delivered to Cigna with relevant medical records and other information supporting the claim; however, Cigna still refused to pay for these covered benefits, inexplicably claiming on

various occasions that the medical records were not received or were not sufficient to support the medical necessity of the procedures.

69.   Cigna's denial or underpayment of benefits was not only untimely, but it was also completely improper, arbitrary, and contrary to the benefits plan.

70.   The total for all of the required services that were improperly denied or underpaid by Cigna for Diane T is: **$8,561.70.**

71.   After the benefits were improperly denied or underpaid, Milione (on behalf of Diane T) went through the entire available appeal process and inexplicably, all appeals were denied and the required payment remains outstanding.

72.   To date, the claim for benefits for Diane T remains denied and unpaid.

*Kavita N:*

73.   Kavita N was a patient of Milione and CIGNA denied benefits or significantly underpaid for certain services performed on the following dates: November 3, 2021, October 12, 2022, February 13, 2023, February 14, 2023.

74.   Kavita N was, at all relevant times, a covered beneficiary under a benefit plan pursuant to which, Kavita N is entitled to health care benefits.

75.   The chiropractic services, or as otherwise described in the Cigna plan, "Chiropractic Care Services" – i.e., diagnostic and treatment services utilized in an office setting by chiropractic doctors, including management of

neuromusculoskeletal conditions through manipulation – provided by Milione are covered services under the CIGNA plan and fall under the category of "Outpatient Therapy Services" and accordingly, Milione is entitled to payment for the services provided.

76.    The chiropractic services covered under the Cigna plan include manipulation and other ancillary physiological treatment rendered to joints to restore motion, reduce pain and improve function.

77.    Per the Cigna plan, outpatient services for out of network providers, such as Milione are paid in the range of 60-80% of the allowed charges and/or maximum reimbursable amount, which are calculated for out of network providers, such as Milione, based on the providers normal charge for a similar service or an employer-selected percentage of a fee scheduled developed by Cigna.

78.    Historically, until Cigna's improper denials and/or underpayments for the various patients identified in this complaint, the payment by Cigna has been in the 60-80% of the billed charges by Milione.

79.    When Kavita N became a patient of Milione, she signed an assignment of benefits, which provided that:

> I hereby assign all applicable health insurance benefits to which I and/or my dependents are entitle to Provider [defined as Milione]. . . I hereby authorize Provider to submit claims, on my and/or my dependent's behalf, to the benefit plan (or its administrator) listed on the current insurance card I provided to Provider, in good faith. I also hereby instruct my benefit plan (or its administrator) to pay Provider

directly for services rendered to me or my dependents.  To the extent that my current policy prohibits direct payment to Provider, I hereby instruct and direct my benefit plan (or its administrator) to provide documentation stating such non-assignment to myself and Provider upon request. Upon proof of such non-assignment, I instruct my benefit plan (or its administrator) to make out the check to me and mail it directly to Provider.

80.    In addition, Kavita N signed an authorization allowing Milione to act as Kavita N's "Authorized Representative" in connection with any "claim, right, or cause in action that [she] might have under such insurance policy and/or benefit plan" and the right to "pursue such claim, right or cause of action in connection with said insurance policy and/or benefit plan."

81.    The claims for the denied procedures were delivered to CIGNA with relevant medical records and other information supporting the claim; however, CIGNA still refused to pay for these covered benefits, inexplicably claiming on various occasions that the medical records were not received or were not sufficient to support the medical necessity of the procedures.

82.    CIGNA's denial or underpayment of benefits was not only untimely, but it was also completely improper, arbitrary, and contrary to the benefits plan.

83.    The total for all of the required services that were improperly denied or underpaid by CIGNA for Kavita N is: **$12,304.74.**

84.    After the benefits were improperly denied or underpaid, Milione (on behalf of Kavita N) went through the entire available appeal process and

inexplicably, all appeals were denied and the required payment remains outstanding.

85.    To date, the claim for benefits for Kavita N remains denied and unpaid.

*Christopher H:*

86.    Christopher H was a patient of Milione and BCBS denied benefits or significantly underpaid for certain services performed on the following dates: March 1, 2023, March 8, 2023, March 20, 2023, April 5, 2023, April 12, 2023, April 19, 2023.

87.    Christopher H was, at all relevant times, a covered beneficiary under a benefit plan pursuant to which, Christopher H is entitled to health care benefits.

88.    The chiropractic services, or as otherwise described in the BCBS plan, "Chiropractic Care Services" – i.e., diagnostic and treatment services utilized in an office setting by chiropractic doctors, including management of neuromusculoskeletal conditions through manipulation – provided by Milione are covered services under the BCBS plan and fall under the category of "Outpatient Therapy Services" and accordingly, Milione is entitled to payment for the services provided.

89.     The chiropractic services covered under the BCBS plan include manipulation and other ancillary physiological treatment rendered to joints to restore motion, reduce pain and improve function.

90.     Per the BCBS plan, outpatient services for out of network providers, such as Milione are paid in the range of 60-80% of the allowed charges and/or maximum reimbursable amount, which are calculated for out of network providers, such as Milione, based on the providers normal charge for a similar service or an employer-selected percentage of a fee scheduled developed by BCBS.

91.     Historically, until BCBS's improper denials and/or underpayments for the various patients identified in this complaint, the payment by BCBS has been in the 60-80% of the billed charges by Milione.

92.     When Christopher H became a patient of Milione, he signed an assignment of benefits, which provided that:

> I hereby assign all applicable health insurance benefits to which I and/or my dependents are entitle to Provider [defined as Milione]. . . I hereby authorize Provider to submit claims, on my and/or my dependent's behalf, to the benefit plan (or its administrator) listed on the current insurance card I provided to Provider, in good faith. I also hereby instruct my benefit plan (or its administrator) to pay Provider directly for services rendered to me or my dependents.  To the extent that my current policy prohibits direct payment to Provider, I hereby instruct and direct my benefit plan (or its administrator) to provide documentation stating such non-assignment to myself and Provider upon request. Upon proof of such non-assignment, I instruct my benefit plan (or its administrator) to make out the check to me and mail it directly to Provider.

93.     In addition, Christopher H signed an authorization allowing Milione to act as Christopher H's "Authorized Representative" in connection with any "claim, right, or cause in action that [she] might have under such insurance policy and/or benefit plan" and the right to "pursue such claim, right or cause of action in connection with said insurance policy and/or benefit plan."

94.     The claims for the denied procedures were delivered to BCBS with relevant medical records and other information supporting the claim; however, BCBS still refused to pay for these covered benefits, inexplicably claiming on various occasions that the medical records were not received or were not sufficient to support the medical necessity of the procedures.

95.     BCBS's denial or underpayment of benefits was not only untimely, but it was also completely improper, arbitrary, and contrary to the benefits plan.

96.     The total for all of the required services that were improperly denied or underpaid by BCBS for Christopher H is: **$13,233.86.**

97.     After the benefits were improperly denied or underpaid, Milione (on behalf of Christopher H) went through the entire available appeal process and inexplicably, all appeals were denied and the required payment remains outstanding.

98.     To date, the claim for benefits for Christopher H remains denied and unpaid.

*Maria P:*

99.    Maria P was a patient of Milione and BCBS denied benefits or significantly underpaid for certain services performed on the following dates: August 31, 2020, September 2, 2020, September 9, 2020, September 10, 2020, September 14, 2020, September 16, 2020.

100.   Maria P was, at all relevant times, a covered beneficiary under a benefit plan pursuant to which, Maria P is entitled to health care benefits.

101.   The chiropractic services, or as otherwise described in the BCBS plan, "Chiropractic Care Services" – i.e., diagnostic and treatment services utilized in an office setting by chiropractic doctors, including management of neuromusculoskeletal conditions through manipulation – provided by Milione are covered services under the BCBS plan and fall under the category of "Outpatient Therapy Services" and accordingly, Milione is entitled to payment for the services provided.

102.   The chiropractic services covered under the BCBS plan include manipulation and other ancillary physiological treatment rendered to joints to restore motion, reduce pain and improve function.

103.   Per the BCBS plan, outpatient services for out of network providers, such as Milione are paid in the range of 60-80% of the allowed charges and/or maximum reimbursable amount, which are calculated for out of network providers,

such as Milione, based on the providers normal charge for a similar service or an employer-selected percentage of a fee scheduled developed by BCBS.

104.   Historically, until BCBS's improper denials and/or underpayments for the various patients identified in this complaint, the payment by BCBS has been in the 60-80% of the billed charges by Milione.

105.   When Maria P became a patient of Milione, she signed an assignment of benefits, which provided that:

> I hereby assign all applicable health insurance benefits to which I and/or my dependents are entitle to Provider [defined as Milione]. . . I hereby authorize Provider to submit claims, on my and/or my dependent's behalf, to the benefit plan (or its administrator) listed on the current insurance card I provided to Provider, in good faith. I also hereby instruct my benefit plan (or its administrator) to pay Provider directly for services rendered to me or my dependents.  To the extent that my current policy prohibits direct payment to Provider, I hereby instruct and direct my benefit plan (or its administrator) to provide documentation stating such non-assignment to myself and Provider upon request. Upon proof of such non-assignment, I instruct my benefit plan (or its administrator) to make out the check to me and mail it directly to Provider.

106.   In addition, Maria P signed an authorization allowing Milione to act as Maria P's "Authorized Representative" in connection with any "claim, right, or cause in action that [she] might have under such insurance policy and/or benefit plan" and the right to "pursue such claim, right or cause of action in connection with said insurance policy and/or benefit plan."

107.   The claims for the denied procedures were delivered to BCBS with relevant medical records and other information supporting the claim; however, BCBS still refused to pay for these covered benefits, inexplicably claiming on various occasions that the medical records were not received or were not sufficient to support the medical necessity of the procedures.

108.   BCBS's denial or underpayment of benefits was not only untimely, but it was also completely improper, arbitrary, and contrary to the benefits plan.

109.   The total for all of the required services that were improperly denied or underpaid by BCBS for Maria P is: **$7,509.87.**

110.   After the benefits were improperly denied or underpaid, Milione (on behalf of Maria P) went through the entire available appeal process and inexplicably, all appeals were denied and the required payment remains outstanding.

111.   To date, the claim for benefits for Maria P remains denied and unpaid.

*Brittany M:*

112.   Brittany M was a patient of Milione and BCBS denied benefits or significantly underpaid for certain services performed on the following dates: September 10, 2020, September 15, 2020, September 30, 2020, October 6, 2020, October 20, 2020, November 4, 2020, January 24, 2022, January 31, 2022, February 2, 2022, February 7, 2022, February 14, 2022, February 23, 2022,

February 28, 2022, March 7, 2022, March 16, 2022, April 4, 2022, April 13, 2022, April 18, 2022, April 25, 2022, May 9, 2022, May 23, 2022, June 2, 2022, June 22, 2022, July 6, 2022, July 11, 2022, July 27, 2022, August 10, 2022, August 31, 2022, September 14, 2022, October 17, 2022, November 7, 2022, November 14, 2022, November 28, 2022, November 29, 2022, December 5, 2022, December 19, 2022, January 4, 2023, January 18, 2023, February 1, 2023, February 15, 2023, February 22, 2023, April 12, 2023, May 2, 2023, May 17, 2023

113.   Brittany M was, at all relevant times, a covered beneficiary under a benefit plan pursuant to which, Brittany M is entitled to health care benefits.

114.   The chiropractic services, or as otherwise described in the BCBS plan, "Chiropractic Care Services" – i.e., diagnostic and treatment services utilized in an office setting by chiropractic doctors, including management of neuromusculoskeletal conditions through manipulation – provided by Milione are covered services under the BCBS plan and fall under the category of "Outpatient Therapy Services" and accordingly, Milione is entitled to payment for the services provided.

115.   The chiropractic services covered under the BCBS plan include manipulation and other ancillary physiological treatment rendered to joints to restore motion, reduce pain and improve function.

116.   Per the BCBS plan, outpatient services for out of network providers, such as Milione are paid in the range of 60-80% of the allowed charges and/or maximum reimbursable amount, which are calculated for out of network providers, such as Milione, based on the providers normal charge for a similar service or an employer-selected percentage of a fee scheduled developed by BCBS.

117.   Historically, until BCBS's improper denials and/or underpayments for the various patients identified in this complaint, the payment by BCBS has been in the 60-80% of the billed charges by Milione.

118.   When Brittany M became a patient of Milione, he signed an assignment of benefits, which provided that:

> I hereby assign all applicable health insurance benefits to which I and/or my dependents are entitle to Provider [defined as Milione]. . . I hereby authorize Provider to submit claims, on my and/or my dependent's behalf, to the benefit plan (or its administrator) listed on the current insurance card I provided to Provider, in good faith. I also hereby instruct my benefit plan (or its administrator) to pay Provider directly for services rendered to me or my dependents.  To the extent that my current policy prohibits direct payment to Provider, I hereby instruct and direct my benefit plan (or its administrator) to provide documentation stating such non-assignment to myself and Provider upon request. Upon proof of such non-assignment, I instruct my benefit plan (or its administrator) to make out the check to me and mail it directly to Provider.

119.   In addition, Brittany M signed an authorization allowing Milione to act as Brittany M's "Authorized Representative" in connection with any "claim, right, or cause in action that [she] might have under such insurance policy and/or

benefit plan" and the right to "pursue such claim, right or cause of action in connection with said insurance policy and/or benefit plan."

120.   The claims for the denied procedures were delivered to BCBS with relevant medical records and other information supporting the claim; however, BCBS still refused to pay for these covered benefits, inexplicably claiming on various occasions that the medical records were not received or were not sufficient to support the medical necessity of the procedures.

121.   BCBS's denial or underpayment of benefits was not only untimely, but it was also completely improper, arbitrary, and contrary to the benefits plan.

122.   The total for all of the required services that were improperly denied or underpaid by BCBS for Brittany M is: **$78,234.39.**

123.   After the benefits were improperly denied or underpaid, Milione (on behalf of Brittany M) went through the entire available appeal process and inexplicably, all appeals were denied and the required payment remains outstanding.

124.   To date, the claim for benefits for Brittany M remains denied and unpaid,

125.   The decisions on the appeals by the various insurance carrier reviewers for the various Milione patients listed above were done in such a way as to suggest that the reviewers were actually looking for ways to deny coverage as

opposed to looking for ways to cover the various patients claims.  This is improper under ERISA and under applicable State Law.

126.   The various carriers were required to provide benefits and coverage to Milione's patients for the various nerve studies and other procedures conducted on each patient and by this action, Milione is seeking to enforce the coverage for the paid-for benefits his patients are entitled to under the various plans sold by the various insurance carriers listed in this complaint.

## FIRST CLAIM FOR RELIEF
## AGAINST CIGNA AND AMERICAN SPECIALTY HEALTH GROUP –
## Jeremy S, Elizabeth K, Andrew D, Diane T, and Kavita N

127.   Milione repeats the allegations contained in each of the preceding paragraphs of this Complaint.

128.   Claims were submitted to Cigna for various procedures conducted on Milione's patients, Jeremy S, Elizabeth K, Andrew D, Diane T and Kavita N on the various dates of service noted in this complaint.

129.   The claims for benefits by Jeremy S, Elizabeth K, Andrew D, Diane T and Kavita N were improperly denied or underpaid by Cigna and there is a total amount due and outstanding for the five patient/claimants of **$98,978.12**, which was the total allowed cost of the treatment for the above claims per the various plan documents.

130.   Cigna wrongfully denied or underpaid the claims for, among other reasons, that the claims were not medically necessary or that Milione had failed to provide medical records to Cigna – despite the fact that medical records were supplied on multiple occasions.

131.   The positions taken by Cigna in denying or underpaying the claims were not only contrary to the plan documents, but they were also contrary to the positions that Cigna had already taken on multiple occasions during the plan year and in prior plan years at which time Cigna had paid the appropriate amounts for the procedures and requested benefits.

132.   Inexplicably, despite a full appeal process, Cigna has steadfastly maintained its denial or underpayment of benefits.

133.   Cigna's denial or underpayment of benefits was not in the best interest of the patients and was a threat to their well-being.

134.   Following the denial or underpayment of the claim for benefits to Jeremy S, Elizabeth K, Andrew D, Diane T and Kavita N under the Cigna plans, all required administrative remedies under ERISA were exhausted.

135.   As a proximate result of the denial or underpayment of medical benefits, Milione has been damaged in the amount of all medical bills incurred for the various procedures, in a total sum to be proven at the time of trial, but believed to be **$98,978.12**.

136.   As a further direct and proximate result of Cigna's improper determination regarding the various procedures, Milione, in pursuing this action, has been required to incur attorney's fees and costs.   Pursuant to 29 U.S.C. § 1132(g)(1), Milione is entitled to have those fees and costs paid for by Cigna.

**WHEREFORE**, Milione demands relief under ERISA as follows:

a.  For compensatory damages, including all amounts owed to date for the required procedures for the various patients totaling **$98,978.12**;

b.  A declaration that Cigna was and is required to pay for the various procedures at issue;

c.  For attorneys fees as permitted by law;

d.  Interest and costs of suit;

e.  Such other relief that the Court deems appropriate.

### SECOND CLAIM FOR RELIEF
### AGAINST BCBS FOR DENIAL OF BENEFITS – Christopher H, Maria P and Brittany M

137.   Milione repeats the allegations contained in each of the preceding paragraphs of this Complaint.

138.   Claims were submitted to BCBS for various procedures conducted on Milione's patients, Christopher H, Maria P and Brittany M for the various dates of service noted above in this complaint.

139.   The claims for benefits submitted by Christopher H, Maria P and Brittany M were improperly denied or underpaid by BCBS and there is a total

amount due and outstanding for the three patient/claimants of **$84,425.87**, which was the total cost of treatment for the various claim dates.

140.   BCBS wrongfully denied the claims or underpaid the claims for, among other reasons, that the claims were not medically necessary and/or that Milione had failed to provide medical records to support the claim, despite the fact that medical records were provided on numerous occasions..

141.   The positions taken by BCBS in denying or underpaying the claims were not only contrary to the various plan documents, but they were also contrary to positions that BCBS had already taken on multiple occasions during the plan year and in the prior plan years at which time BCBS had paid the appropriate amounts for the procedures and requested benefits.

142.   Inexplicably, despite a full and complete appeal process, BCBS has steadfastly maintained its denial or underpayment of benefits.

143.   BCBS's denial or underpayment of benefits was not in the best interest of the patients and was a threat to their wellbeing.

144.   Following the denial or underpayment of the claim for benefits to Christopher H, Maria P and Brittany M under the BCBS plans, all required administrative remedies under ERISA were exhausted.

145.   As a proximate result of the denial or underpayment of medical benefits, Milione has been damaged in the amount of all medical bills incurred for

the various procedures, in a sum to be proven at the time of trial, but believe to be **$84,425.87.**

146.   As a further direct and proximate result of BCBS's improper determination regarding the various procedures, Milione, in pursuing this action, has been required to incur attorney's fees and costs.   Pursuant to 29 U.S.C. § 1132(g)(1), Milione is entitled to have those fees and costs paid for by BCBS.

**WHEREFORE**, Milione demands relief under ERISA as follows:

a.   For compensatory damages, including all amounts owed to date for the required and covered nerve studies and related procedures for the various patients totaling **$84,425.87**;

b.   A declaration that Optum/Oxford was and is required to pay for the required nerve studies and related procedures;

c.   For attorneys fees as permitted by law;

d.   Interest and costs of suit;

e.   Such other relief that the Court deems appropriate.

Dated:   December 26, 2023            **THE MILUN LAW FIRM, LLC**
                                       Attorneys for Plaintiff


                               By:   **_/s/ Ryan Milun_**
                                       RYAN MILUN
                                       THE MILUN LAW FIRM, LLC
                                       20 Commerce Drive, Suite 135
                                       Cranford, NJ 07016
                                       Ph: 862-702-5010 ex 1001
                                       Ryan.milun@milunlaw.com

## **RULE 11 CERTIFICATION**

RYAN MILUN declares as follows:

I am an attorney and owner of the law firm of The Milun Law Firm, LLC, the attorneys for plaintiff in this action.  Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on December 26, 2023

*/s/ Ryan Milun*
RYAN MILUN